Russell, C. J.
McLanahan Brothers sued Pressley and others for a sum alleged to be due upon a promissory note given for the purchase-price of two mules, title to which was retained by Mc-Lanahan Brothers under the provisions of the contract. It was also stipulated in the note that the possession of the purchasers should be unlawful after the maturity of the debt, and the vendors, or their agents, might take possession of the property without due process of law, and might sell it at public outcry, after ten days notice in writing of the time and place of sale had been given to the purchasers, and that the proceeds of the sale should be applied to the payment of the debt, and if there should be any surplus in excess of the debt, it should be paid to the makers of the instrument ; but it was also provided that if' at such public sale the property did not bring enough to pay the debt, the makers would be liable for any balance remaining unpaid. The note was for $512.50 and payments aggregating $100 were made upon it. There being default as to the balance due, McLanahan Brothers, under the power conferred in the instrument, took possession of the mules, gave the vendees, Pressley and others, the required notice in writing, and, under the authority to sell conferred by the contract, exposed the property to public sale, and the vendors themselves purchased the mules for the sum of $275, which was entered as a credit upon the note, and they sued the defendants for $170.13, the unpaid balance of the note. The defendants pleaded that the contract had been rescinded by the plaintiffs’ retaking possession of the mules, and a consequent'failure of consideration. The defendants, in their answer, insisted that they were not only not liable upon the note, but that the plaintiffs, having rescinded the contract by retaking the mules, were indebted to the defendants in the sum of $25, as the difference between the sum of $75, which was alleged to be the reasonable hire of the mules while they were in the possession of the defendants, and the sum of $100 which had been paid to the plaintiffs by the defendants, and for which <the defendants, because of the plaintiffs’ rescission of the contract, had received no consideration other than the use of the mules. On the conclusion of the evidence the judge directed a verdict in favor of the plaintiffs for the unpaid balance appearing from the note; and exception is taken to this judgment.
The court did not err in directing the verdict. If the plaintiffs *368 had retaken the mules and retained possession without exercising the power of sale conferred by the vendees, and had disposed of them at a private sale, or otherwise converted them to their own use, it is apparent that this would have evidenced a rescission. But the plaintiffs promptly availed themselves of the power of sale conferred upon them by the makers of the note. It is undisputed that they gave the defendants the ten-days notice in writing. The sale was open and public. It was within the power of the defendants to buy the mules, or to procure others to do so for them if there was any danger of the property being sold below its value. There can be no question that the fact that the plaintiffs retook possession of the mules and had them sold would not amount to a rescission, if any person other than the plaintiffs had purchased the mules. In other words, the sale could not be attacked if a stranger, wholly disconnected with McLanahan Brothers, had bought the mules for himself. But it is insisted that since one of the members of the firm of McLanahan Brothers purchased the mules, the sale was void, and, as U result, that the retaking of possession by McLanahan Brothers amounted to a rescission. Conceding, without more, that the mules were purchased by McLanahan Brothers, we can not, under the evidence in the record, hold that the sale was void. It is true that in conducting the sale, under the power conferred by 'the instrument in this ease, McLanahan Brothers became the agents of the makers of the note; and it is a general rule, well recognized, that one who conducts a sale in any fiduciary capacity, can not both sell and buy at his own sale. He can not be at once the representative of another and the representative of his own interests. But it is well settled that in such a ease as that now before us the sale is not absolutely void. The holder of the note— the vendor and the original owner of the personal property — who has reserved title thereto as security for his debt has himself interests to be protected. It may be that the property to be sold is the only property to which he can look for payment of his debt, for his debtor may be wholly insolvent. He should not be required to stand idly by, being prohibited to bid, and see cháttels of value purchased by others far below their worth, and the only security for the debt be thus absolutely destroyed and dissipated. That the sale is voidable and not void is a rule which we think has been wisely established in the interest of both the vendor and the vendee in *369 such transactions as that now before us, where there is no evidence of fraud on the part of the agent exercising the power of sale. Of course, if there were any circumstances sufficient to indicate fraud, the sale would be wholly void, but where the power of sale is exercised in good faith, the mere purchase of the property by the original vendor does not of itself avoid his purchase. If the debtor thinks the sale is injurious to his interest, it may be avoided by the tender upon his part, within a reasonable time and before the rights of bona fide purchasers intervene, of the sum due by him under the contract. Here there is no evidence either of fraud or of tender. See Palmer. Young, 96 Ga. 246 (2), 248 (22 S. E. 928).

Judgment ajfirmed.